**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EFFINGHAM DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BOYCE ALLEN BURNS and | ) | Case No.: 19-60349 |
| AMANDA LANE BURNS, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| *************************************************** | ) | |
| NANCY J. GARGULA, | ) | |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No.: 20-06018 |
| | ) | |
| DEIGHAN LAW LLC | ) | |
| f/k/a LAW SOLUTIONS CHICAGO LLC, | ) | |
| d/b/a UPRIGHT LAW LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JAMES E. FORD, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**UNITED STATES TRUSTEE'S OBJECTION TO DEFENDANTS'**</u>
<u>**MOTION TO WITHDRAW THE REFERENCE**</u>

Mark D. Skaggs, Trial Attorney
ARDC No.: 6210087
United States Department of Justice
Office of the U.S. Trustee
401 Main St., Suite 1100
Peoria, IL 61602
Phone: (309) 671-7854, ext. 226
Mobile: (202) 495-9571
Email: Mark.D.Skaggs@usdoj.gov

The Court should deny the Motion to Withdraw the Reference (the "Motion") filed by Deighan Law LLC, d/b/a in Illinois as Upright Law LLC ("UpRight Law") and James Ford ("Mr. Ford") (collectively "Defendants") seeking withdrawal of the reference under 11 U.S.C. § 157(d) of core bankruptcy matters, because the Motion is substantively flawed.

## Introduction

This Motion is the Defendants' *second* attempt to obtain withdrawal of the reference of core bankruptcy matters pertaining to UpRight Law's alleged violation of its duties to the Debtors in the above-captioned bankruptcy case. Significantly, the Motion contains the same groundless claims that the United States District Court for the Southern District of Illinois ("District Court") has already soundly rejected in its denial of the Defendants' Motion to Withdraw the Reference in the Burns' main Bankruptcy Case, and in its denial of Defendants' Motions to Withdraw the Reference in three other adversary proceedings pending against UpRight Law.[1] As with the other Three Adversaries in which the District Court denied withdrawal of the reference, the above-captioned adversary involves core bankruptcy proceedings brought pursuant to 11 U.S.C. §§329 and 526 and Bankruptcy Rule 2017. Likewise, as the District Court determined with respect to the other Three Adversaries, substantial and material consideration of non-Bankruptcy Code law is not remotely necessary for the resolution of the case. Further, and also like the other Three Adversaries, Defendants' Motion was filed untimely, after the Bankruptcy Court had already denied their Motion to Dismiss this case, and after Defendants filed their Answer. Defendants' Motion should be denied for the same reasons set forth in the District Court's decisions in the other adversaries and, more specifically, for all the reasons set forth below.

## PROCEDURAL BACKGROUND

---

[1] The three adversary proceedings (collectively, the "Three Adversaries") pending in the Bankruptcy Court are: *Gargula v. Deighan Law LLC, et al (In re Potter),* AP Case No. 20-06008; *Gargula v. Deighan Law LLC, et al (In re Brucker),* AP Case No. 20-03052; and *Gargula v. Deighan Law LLC, et al (In re McClatchery),* AP Case No. 20-03054.

UpRight Law's first attempt to withdraw one of their cases[2] from the Bankruptcy Court was rejected by Chief Judge Nancy J. Rosenstengel of the United States District Court for the Southern District of Illinois ("District Court") on December 9, 2019.  *See, Eric Homa vs. United States Trustee*, SDIL Case No. 3:19-cv-01139-NJR, Doc. No. 9.  UpRight Law's second attempt to withdraw the reference was filed by Defendants on October 1, 2020, in thirty-five cases which were consolidated by the District Court.[3]  Defendants simultaneously sought leave to appeal bankruptcy court interlocutory orders denying their motions to close in those same thirty-five cases, and those thirty-five appeals have also been consolidated.  The consolidated appeals and Second Request for Withdraw of Reference were denied on April 16, 2021 by Judge Stephen P. McGlynn of the United States District Court for the Southern District of Illinois. UpRight Law's third, fourth, and fifth unsuccessful requests to withdraw a case from the Bankruptcy Court were in the Three Adversaries. Defendants' Motion represents UpRight Law's sixth attempt to withdraw the reference from the Bankruptcy Court.

After Defendants filed Boyce and Amanda Burns' ("Debtors") underlying bankruptcy case (the "Burns Bankruptcy Case"), the Bankruptcy Court set a hearing to consider and act upon the "Disclosure of Attorney Compensation" (Bkr. Case, Doc. 9); at the conclusion of which, the Bankruptcy Court directed Defendants to file an itemization of the attorney's fees charged and the services provided.  (Bkr. Case, Doc. 26).  Defendants filed their "Itemization of Work" (Bkr. Case, Doc. 28).  The UST requested Defendants' consent to the Rule 2004 examinations of Debtors and Mr. Ford.  Defendants refused to consent, resulting in formal Motions for Rule 2004 Examinations being filed.  (Bkr. Case, Docs. 43 and 45).  Defendants objected to those motions.  At a hearing, the Bankruptcy Court heard, considered, and rejected Defendants' objections to the motions and ultimately issued an Order (Bkr. Case, Doc. 55) authorizing only *two* Rule 2004 examinations in the

---

[2] *In re Chelsea Lynne Potter*, SDIL Case Number 19-60216 (the "Potter Bankruptcy Case").
[3] *Deighan Law LLC, et al., v. Gargula*, 3:20-cv-01176-SPM (the "Second Request for Withdraw of Reference").

Burns Bankruptcy Case: an examination of the Debtors and one of Mr. Ford. Defendants did not appeal the order authorizing the examinations. Those two examinations were conducted on the same day and in the same location. No other Rule 2004 examinations have been taken in the Burns Bankruptcy Case. Discovery has not yet commenced in this adversary proceeding.

On December 31, 2020, the UST filed the above-captioned complaint seeking compensatory and injunctive relief as well as the imposition of sanctions against Defendants pursuant to 11 U.S.C. §§ 526 and 329[4] and Federal Rule of Bankruptcy Procedure 2017. Following Defendants' Motion to Dismiss and brief in support of the Motion to Dismiss, and the UST's Objection thereto, the Bankruptcy Court denied Defendants' Motion to Dismiss. Defendants thereafter filed their Answer to the Complaint and then filed their Motion on April 12, 2021.

Pursuant to 28 U.S.C. § 157(a), a district court may refer "any or all cases under title 11, any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges of the district. 28 U.S.C. § 157(a). The District Court has done so in this district.[5] That section of the United States Code further provides that:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). In the Motion, the Defendants allege two bases for mandatory withdrawal of the reference and a third basis for permissive withdrawal. First, the Defendants argue that the District Court must withdraw the reference in this adversary proceeding because they have a Seventh

---

[4] Further statutory citations are to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.
[5] This district's Local Rule Br 1001.1 is broad in scope and automatically refers all cases rising under Title 11 to the bankruptcy judge in this district and provides, "[i]t is the intention of this Court that the Bankruptcy Judges be given the broadest possible authority to administer cases properly within their jurisdiction, and this rule shall be interpreted to achieve this end."

Amendment right to a jury trial and because the adjudication of the case requires consideration of constitutional issues, including the Due Process Clause of the Fifth Amendment.  Alternatively, or additionally, the Defendants argue that the District Court should exercise its discretion and permissively withdraw the reference due to a variety of factors, chief among them the Defendants' allegation that the UST's claims are not core.[6]  For the reasons set forth in this Objection, the Court should deny the Motion in its entirety.

**Argument**

**I.    The Claims in the Complaint Are Statutory, Core Matters Under the Bankruptcy Code**

"There can be no more fundamental exercise of core subject matter jurisdiction by the bankruptcy court than its policing of professionals whom debtors pay to render service in connection with their cases." *In re Rose,* 314 B.R. 663, 683 (E.D. Tenn. 2004).  In defiance of this well-settled law, and underpinning their misplaced Motion, Defendants argue erroneously that the claims in the Complaint, which are brought pursuant to 11 U.S.C. §§ 329, 526, and Bankruptcy Rule 2017 are non-core matters. To the contrary, claims addressing debtors' counsel arising under §§ 329, 526, and Bankruptcy Rule 2017 are core matters concerning the administration of the estate.  *See In re Rosales,* 621 B.R. 903, 912 (Bank. D. Kan. 2020); *In re Henderson,* 360 B.R. 477, 483–84 (Bankr. D.S.C. 2006); *In re Davis,* 605 B.R. 658, 660 (Bankr. D. N.J. 2019); *In re Harrelson,* 537 B.R. 16, 27 (Bankr. M.D. Ala. 2015). Also contrary to Defendants' contentions, the UST's request for sanctions as provided for in §526 is also a core matter, as it arises out of claims which are themselves core proceedings.  *See In re French Bourekas, Inc.,* 183 B.R. 695, 696 (Bankr. S.D. N.Y. 1995) (holding that the power to sanction

---

[6] The Defendants alternatively request that if the Court denies the Motion, that the Court instead certify the Seventh Amendment right to a jury trial issue and the Fifth Amendment due process issue for interlocutory appeal to the United States Court of Appeals for the Seventh Circuit.  The Defendants did not provide any argument or authority in support of this request in their Memorandum in Support of the Motion, so the UST also did not address this request herein. Should the District Court decide to consider the Defendants' alternative request, the UST would request the opportunity to brief its opposition to that request as well.

parties for conduct in a core matter is itself core); *In re Williams,* 2018 WL 832894, at *17 (Bankr. W.D. Va. 2018), *aff'd in part, vacated in part, remanded at* 2019 WL 6742996 (W.D. Va. December 11, 2019).

II.    **There is no constitutional right to a jury trial on the statutory, core bankruptcy claims in this adversary proceeding.**

Defendants erroneously assert that they "possess a Seventh Amendment right to a jury trial on the claims asserted by the United States Trustee in her *Complaint* … pursuant to 11 U.S.C. § 526 (Counts I, II and III)."  (Doc. 15-1, Pg.1)[7]  Notably, Defendants cannot and have not cited to a single case in which a court held there is a jury trial right on core, statutory claims asserted under 11 U.S.C. § 526.  Nevertheless, Defendants conclude that the District Court must withdraw the reference based upon their specious claim of a jury trial right and demand by Defendants.  For the reasons set forth below, Defendants' arguments fail.

A.    Defendants' demand for jury trial should be denied because the UST's complaint alleges causes of action and remedies that are equitable in nature and involve public rights.

The Seventh Amendment to the United States Constitution provides, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury shall be preserved…". U.S.Const. amend. VII.  The United States Supreme Court has consistently interpreted the phrase "Suits at common law" to refer to, "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered…." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41-42 (1989).

In *Granfinanciera,* the Supreme Court enunciated a three-part analysis for determining the right to a jury trial. A court must first determine whether the action is one historically tied to juries, by comparing the statutory action to 18th century actions brought in the courts of England prior to the merger of courts of law and equity. *Id.* at 42.  Second, the court must consider whether the matter

---

[7] Defendants erroneously state that all three counts of the Complaint are brought pursuant to Section 526.  Count III was not brought pursuant to Section 526, rather, it was brought pursuant to Section 329.

should be characterized as legal, rather than equitable in nature.  This inquiry is more important than

the first in the court's analysis. *Id.*, *citing Tull v. United States*, 481 U.S. 412, 417-418 (1987).  If the matter

is equitable in nature, then the party does not have a right to a jury trial.  If the matter is legal, then a

court must decide, as the third inquiry, whether the matter involves a matter of private rights as

opposed to public rights.  There is no right to a jury trial for issues of public rights that Congress has

committed to a non-Article III adjudicative body or specialized court of equity.  *Granfinanciera*, 492

U.S. 33, 42 & n.4, 50 (1989).

      1.   <u>The UST's injunction and sanctions claims were not historically tied to jury trials.</u>

In this adversary proceeding, the UST is seeking  to prevent unfair and deceptive conduct and

consumer abuse by a debt relief agency under § 526.  The Complaint requests (*inter alia*) injunctive

relief and sanctions in connection with these bankruptcy cases.  Such claims were not historically tied

to jury trials.

Just as § 110 is a consumer protection statute enacted in 1994 to regulate bankruptcy petition

preparers, (*see Gould v. Clippard (In re Gould)*, 340 B.R. 861, 880 n. 28 (M.D. Tenn. 2006), citing H.R.

Rep. 102-834, 103rd Cong., 2d Sess. 40-41 (Oct. 4, 1994); 140 Cong. Rec. H10770(Oct. 4, 1994)), §§

526-528 of the Bankruptcy Code are also consumer protection statutes enacted by Congress in 2005

to strengthen "professionalism standards for attorneys and others who assist consumer debtors with

their bankruptcy cases". *See* H.R. Rep. No. 109-31, 109th Cong. 1st Sess. 17 (2005).  There were no

similar consumer protection laws or causes of action in England for trial by juries in the 18th century.

      2. <u>Defendants are not entitled to a jury trial on the UST's injunctive and sanctions claims
because they are equitable rather than legal in nature.</u>

The injunction and sanction remedies sought by the UST are clearly equitable in nature.  The

primary remedy requested in the complaints is an injunction under § 526(c)(5)(A) to prohibit the

violation of § 526, which regulates debt relief agencies.

The Federal Rules of Bankruptcy Procedure include in the definition of "adversary proceedings" under Fed. R. Bankr. P. 7001, "a proceeding to obtain an injunction or other equitable relief…." *See* Fed. R. Bankr. P. 7001(7).  In *Demos v. Brown (In re Graves)*, 279 B.R. 266 (B.A.P. 9th Cir. 2002) ("*Graves*"), the Bankruptcy Appellate Panel affirmed the bankruptcy court's ruling that there is no right to a trial by jury in an injunction action under §110(j).  The *Graves* court stated that "[t]he "Seventh Amendment analysis of §110(j), which is a statutory cause of action solely for an injunction, is straightforward.  It is long-settled that an action solely for an injunction is "equitable" in nature, hence not subject to the Seventh Amendment right to trial by jury." *Id.* at 272, *citing United States v. Louisiana*, 339 U.S. 699, 706 (1950) (other citations omitted). *See also In re Micron Separations, Inc.*, 220 B.R. 733, 734 (Bankr. D. Mass. 1997) (holding that "[a]n action for injunctive relief is of course equitable in nature and hence does not implicate jury trial rights").

3. Defendants are not entitled to a jury trial because the relief requested in the U.S. Trustee's complaints arises out of public, not private rights.

The UST's complaint also requests the imposition of civil penalties. Even assuming that such relief is "legal" rather than "equitable," Defendants are not entitled to trial by jury on these issues because they involve a "public right" entrusted by Congress to a non-Article III tribunal or specialized court of equity.  *See Granfinanciera*, 492 U.S. at 42 & n.4, 50.

A "private right" is the "liability of one individual to another under the law as defined" such as a "[w]holly private tort, contract, and property cases." *Granfinanciera*, 492 U.S. at 51 and n.8, *citing Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 458 (1977) *and Crowell v. Benson*, 285 U.S. 22, 50 (1932).

"Public rights" are "statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administrative agency or a specialized court of equity. *Granfinanciera (supra)*, 492 U.S. at 55 n.10.  A case asserts a public right if it "arise(s) between the Government and persons subject to its authority in connection with the performance of the

constitutional functions of the executive or legislative departments". *Id.* at 51 n.8.   Situations involving public rights include, for example, "where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights." *Granfinanciera*, 492 U.S. at 51, citing *Atlas Roofing*, 430 U.S. at 458. *See also Stern v. Marshall*, 131 S. Ct. 2594, 2611-15 (2011).

It is clear that this proceeding involves "public" rather than "private" rights. The statute at issue – 526 – is part of a regulatory schemes established by Congress to protect consumers, the aim of which is to protect consumer debtors from unscrupulous conduct by debt relief agencies. *See, e.g., Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231-32 (2010) (debt relief agency provisions were "enacted . . . to correct perceived abuses of the bankruptcy system"); *Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 761 (5th Cir. 2008) (noting that that the sections of the Bankruptcy Code governing debt relief agencies are "meant to curb abuse of the bankruptcy system").  Plaintiff is a statutory official acting in her official capacity to enforce this consumer protection statute. Thus, this proceeding is substantially different from a common law action in tort or contract to address the private rights of individual litigants.[8]

As the Supreme Court has stated, "[i]f a claim that is legal in nature asserts a "public right," ... then the Seventh Amendment does not entitle the parties to a jury trial if Congress assigns its adjudication to an administrative agency or specialized court of equity." *Granfinanciera*, 492 U.S. at 42 n.4.   Here, Congress specifically authorized the bankruptcy courts to adjudicate such claims. *See* 28

---

[8] Defendants also mischaracterize the status of the UST and themselves as "non-parties" and imply that they are being investigated as if they were acting in a "private" capacity before the Bankruptcy Court.  Pursuant to 11. U.S.C. § 307, however, the UST is a party in interest with standing to raise and be heard on any matter.  The UST is given explicit standing to bring the actions in the Complaint under §§ 329 and 526(c)(5). Likewise, as officers of the Court and attorneys for the Debtors, Defendants are explicitly subject to the Bankruptcy Court's jurisdiction to regulate their conduct as attorneys and debt relief agencies, and to review their fees and transactions with debtors and assisted persons. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-45 (1991); *Memorial Estates,* 950 F.2d at 1371; *In re Volpert,* 110 F.3d 494, 500-501 (7th Cir. 1997); *Law Solutions of Chicago LLC v. Corbett,* 971 F.3d 1299, 1316 (11th Cir. 2020) (Bankruptcy court had jurisdiction to impose sanctions on UpRight Law under §526 even in closed cases); *In re Tabor,* 583 B.R. 155 (Bankr. N.D. Ill. 2018); *In re Ebel,* 371 B.R. 866, 868 (S.D. Ill. 2007).  *See also* 11 U.S.C. §§ 105(a), 329, 330, 526 -528, Bankruptcy Rules 2016 and 2017.

U.S.C. § 157(b)(1), (2).[9] Bankruptcy courts "are essentially courts of equity." *Katchen v. Landy*, 382 U.S. 323, 327 (1966); *see also Granfinanciera*, 492 U.S. at 57.[10] Therefore, because this case concerns the enforcement of a statutory scheme protecting public rights, no right to a trial by jury is implicated under the third part of the *Granfinanciera* test.[11]

**B. There is no statutory right to a jury trial in this adversary proceeding.**

There is no statutory right to a jury trial with respect to the causes of action alleged in the UST's complaint. Neither §§ 526-528 nor any other statute create a right to a jury trial with respect to the causes of action alleged in this adversary proceeding.

Nothing in the text of any of the sections of §§ 526-528 or their enacting statute hints that Congress meant to create a statutory jury trial right for any of violations of those sections. (*See* Bankruptcy Abuse Protection and Consumer Protection Act of 2005 (the "BAPCPA"), §227(a), Pub.L. 109-8, 119 Stat. 23(2005)(enacting 11 U.S.C. §§526-528.) Thus, Defendants are not entitled by any statute to a jury trial with regard to the UST's adversary proceeding.

**C. Conclusion**

Neither the Constitution nor any statutes of the United States afford the Defendants the right to a jury trial in this proceeding. The Seventh Amendment to the Constitution does not afford the Defendants a right to a jury trial because the UST's complaint alleges causes of action and remedies that are equitable in nature and involve public rights. Additionally, there are no statutes which create

---

[9] Originally, § 110(i) prohibited bankruptcy courts from imposing damages under § 110(i); instead, they had to make a recommendation to the district court. But Congress removed this restriction in 2005 – strongly supporting the view that Congress believes that such damages are within bankruptcy court's jurisdiction. Moreover, Congress never limited bankruptcy courts' power to enter injunctions. Sections 526-528 allowed for the Bankruptcy Court to impose damages from the enactment of the provisions.

[10] Accordingly, 28 U.S.C. § 157(e) provides that it is only in rare cases that bankruptcy courts can use juries: only when they are specifically designated to do so by the district court and then only with all parties' express consent. 28 U.S.C. § 157(e).

[11] *See also Gould*, 340 B.R. at 881 ("statutory equitable actions involving 'public rights,' such as the injunction authorized by §110(j), are not entitled to the Seventh Amendment jury trial right"), citing *Graves*, 279 B.R. at 272.

a right to a trial by jury in this adversary proceeding.  As such, Defendants demand for a jury trial is improper and does not constitute a basis for the District Court to withdraw the reference.

**III.     Defendants' non-meritorious assertion of constitutional "defenses" does not mandate the withdrawal of the reference.**

Defendants' conclusory assertions of "constitutional" grounds for mandatory withdrawal are erroneous and should be rejected. "Mandatory withdrawal is not required any and every time the bankruptcy court is presented with the need or opportunity to consider federal law other than title 11. It is only where the non-title 11 federal law regulates organizations or activities affecting interstate commerce that withdrawal is required." *In re Rimsat, Ltd.*, 196 B.R. 791, 796 (N.D. Ind. 1995).[12] Defendants have not met their threshold burden to explain how activities affecting interstate commerce are implicated in the basic core matters of a bankruptcy court's regulation of attorneys practicing before it or the bankruptcy court's authority to control its own docket, particularly in cases where bankruptcy court-ordered investigations are pending but not yet concluded.

At least one other court has rejected UpRight Law's claim that a § 526 matter is subject to mandatory withdrawal. "At some level, litigation impacts organizations and activities affecting interstate commerce, but impacting is not synonymous with regulating.  Under § 157(d), mandatory withdrawal requires, at minimum, the presence of a non-Bankruptcy Code federal law that has "more than a de minimis effect on interstate commerce." " *Mikulin v. Law Solutions Chicago, LLC*, 2020 WL 514474, at *2 (N.D. Ala. January 31, 2020) (citing and quoting *In re Rimsat, Ltd.*, 196 B.R. at 797). Notably, "Federal laws that "deal[ ] generally with the organization, jurisdiction, structure, and procedures of the federal judiciary" do not "regulat[e] organizations or activities affecting interstate commerce" within the meaning of § 157(d)." *Mikulin v. Law Solutions Chicago, LLC*, 2020 WL 514474,

---

[12] Defendants cite the case of *Picard v. Avellino*, 469 B.R. 408, 414 (S.D.N.Y. 2012) as an example of a case that holds that "consideration of constitutional issues mandated withdrawal of the reference."  But the *Picard* case contains no such holding or any other holding that support its citation for this purpose.  The *Picard* case involved the application of complicated federal securities laws in a bankruptcy case.

at *2 (quoting *In re Coe-Truman*, 214 B.R. at 186). All of the UST's claims in this adversary proceeding are based solely on violations of, and remedies found in, the Bankruptcy Code, specifically, §§ 329 and 526.

### A.  Defendants' First Amendment Rights Are Not Implicated

Defendants speciously assert, without any substantive support, that their First Amendment rights are infringed by the UST's request under 11 U.S.C. § 526(c)(5) to enjoin UpRight Law from violating § 526(a) by misrepresentations to prospective assisted persons and assisted persons, including the Debtors, regarding services Defendants cannot or do not intend to actually provide. As expressed in the title of the Bankruptcy Abuse Prevention and Consumer Protection Act, §§ 526- 528 are designed by Congress to protect vulnerable debtors from being misled by attorneys who use deception and misrepresentation in their transactions with consumer debtors.  BAPCPA's provisions address misleading representations made to consumer debtors by debt relief agencies (including attorneys) and thus do not offend the First Amendment. *See Milavetz, Gallop & Milavetz, P.A. v. U.S.,* 559 U.S. 229, 249–50 (2010) (holding section 528 does not impinge on attorney First Amendment rights), *citing Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626, 651 (1985) (an attorney's constitutionally protected interest in not providing the required factual information is "minimal…", and an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers) (quotations omitted). Thus, withdrawal of the reference is not supported by Defendants' meritless First Amendment argument.

### B.  Defendants' Due Process Rights Have Not Been Violated

The next constitutional claim made by the Defendants is also without merit.  Defendants allege that the Bankruptcy Court "cannot serve as a neutral arbiter, and thus the Defendants' Fifth Amendment right to due process requires withdrawal of the reference.  Defendants cursorily list six examples but provide no case law or legal analysis to support them. Most are abbreviated

regurgitations from their Second Motion to Withdraw the Reference, their Third Motion to Withdraw the Reference and their Fourth Motion to Withdraw the Reference (collectively the "Prior Withdraw Motions"), which have been rejected by the District Court. Addressed below seriatum, they are erroneous and, in some instances, downright absurd.[13]

(1) "No separation of powers," because the UST is a component of an executive branch agency that was directed by the Bankruptcy Court to investigate the fees and practices of UpRight Law in this and other cases. Defendants contend that because the Bankruptcy Court initiated and perpetuated these investigations, it cannot impartially preside over an adversary proceeding resulting from the investigations. There is no basis for this contention, which is a slight variation of nearly identical arguments in the Prior Withdraw Motions that the Bankruptcy Court and UST do not have jurisdiction to investigate their fees.

The Bankruptcy Court has no control over how the UST conducts her investigation, the results of that investigation, or any enforcement action the UST may choose to take based on the evidence developed through her investigation. This is akin to saying that a court cannot adjudicate its own orders to show cause. It is a patently absurd contention, and it is unsurprising that the Defendants cite no authority in support of their argument on this point. Moreover, the Bankruptcy Court and the UST each has an independent, statutory duty to review attorneys' fees and conduct under §§ 329, 526 – 528, and Bankruptcy Rule 2017. *See e.g., In re Busy Beaver Bldg Centers, Inc.*, 19 F.3d 833 (3rd Cir. 1994).

(2) "The Bankruptcy Court has violated Defendants' procedural rights" by authorizing Rule 2004 examinations of UpRight Law, its local partners, and debtors "[i]n violation of the express limitations of that rule." This groundless allegation repeats Defendants' arguments in the Prior Withdraw Motions. Defendants' fees and conduct are core matters concerning the administration of

---

[13] The UST incorporates her more extensive opposition to Defendants' meritless constitutional claims set forth in her Opposition to the Second Motion to Withdraw the Reference filed in the Burns Bankruptcy Case at Docket No. 99.

the estate. *In re Rosales,* 621 B.R. at 912. As such, the Rule 2004 examinations are within the scope of Rule 2004. The Bankruptcy Court thus granted the UST's Motions for 2004 Examinations in this (and other) cases, exercising its "broad discretion to approve requests for Rule 2004 examinations." *See In re DeShetler,* 453 B.R. 295 (Bankr. S.D. Ohio 2011). The court addressed the Defendants' objections in its orders and held there was good cause because these subjects are relevant to assist the Court in determining the reasonableness of the fees charged the Debtor, and fall squarely within matters under Rule 2004(b). Defendants did not appeal these orders, presumably because Defendants understand the Court's rulings were correct. Defendants have not articulated a reason this violates their rights to due process. Because it does not.

(3) "The Bankruptcy Court has attempted to usurp the Chapter 7 Trustee's administrative functions," because it denied UpRight Law's motion to close the Burns Bankruptcy Case and other cases.[14] The Bankruptcy Code charges the bankruptcy court with the authority and discretion to close a case, not a chapter 7 trustee. It is within the court's discretion to decide if a case has been fully administered. *See In re Shotkoski,* 420 B.R. 479, 483 (B.A.P. 8th Cir. 2009). When a trustee files a no-asset report, the case is capable of being closed, but need not be, if the court, in its discretion, determines the case has not been fully administered. *In re Schoenewerk,* 304 B.R. 59, 62–63 (Bankr. E.D.N.Y. 2003).[15] Here, as explained in the opinion issued in the Burns Bankruptcy Case, the Bankruptcy Court exercised its discretion and set forth in detail its reasons for deciding the Burns Bankruptcy Case (and other cases) should remain open. Moreover, the filing of the trustee's report does not strip the Bankruptcy Court of jurisdiction to investigate, review, and determine the

---

[14] UpRight Law unsuccessfully sought to withdraw the reference in the Burns Bankruptcy Case as to this issue and also sought interlocutory appeal of the order denying its motion to close the case.

[15] Defendants cite *In re Koza,* 375 B.R. 711, 718 (1st Cir. B.A.P. 2007) for the proposition that the responsibility to review the accuracy and correctness of a trustee's final report lies with the U.S. Trustee, and the bankruptcy court intervenes only when an objection is filed. This is so because the UST has oversight of chapter 7 panel trustees under 28 U.S.C. § 586. *Koza,* however, does not supersede the Bankruptcy Code and Rules, which provide to the Court the discretion and authority to close (and re-open where appropriate) bankruptcy cases.

reasonableness of attorney fees. *See e.g., In re Sweports, Ltd.,* 777 F.3d 364, 367 (7th Cir. 2015); *Law Solutions of Chicago, LLC v. Corbett ,* 971 F.3d 1299, 1316-17 (11th Cir. 2020), *citing, e.g., In re T.H.,* 529 B.R. 112, 134 (E.D. Va. 2015) (bankruptcy court's jurisdiction to impose sanctions "is not affected by the status of a [bankruptcy] case, whether dismissed or closed, or by whether a discharge has been entered").

(4)  "The Bankruptcy Court has already prejudged the merits" by making "Findings of Facts" in the Opinion setting forth the Bankruptcy Court's reasons for denying UpRight Law's motions to close.  Defendants provide no legal basis for this conclusory assertion. Defendants misdirect by ignoring the very nature of a bankruptcy proceeding, where numerous matters may be raised upon which the Court may make factual findings in deciding those particular matters.  For example, if the mere existence of court's findings of fact authorizing a contested Rule 2004 Examination before an adversary proceeding based on related facts has been filed required withdrawal of the reference, the entire bankruptcy system of referral from the District Court to the Bankruptcy Court would be upended.  District Court dockets would be flooded with bankruptcy related adversary proceedings because, as is often noted, a Rule 2004 examination is an investigatory tool not found in the Federal Rules of Civil Procedure which may presage litigation.  *See In re Symington,* 209 B.R. 678 (Bankr. D. Md. 1997).

Defendants also ignore the fact that the Bankruptcy Court's Findings of Fact were expressly based on filings made under oath by the Debtor in this bankruptcy case, on forms prepared and filed by UpRight Law, and on the sworn statements filed by UpRight Law in this case.  The Findings of Fact were *not* findings on the merits of the allegations raised by the UST in this Complaint, but rather, related only to the Court's basis for authorizing Rule 2004 examinations of Debtor and Mr. Ford, and for concluding that the case has not been fully administered.  There is nothing inappropriate about this.

(5) "The Bankruptcy Court has made inconsistent statements about its "motivations" for ordering the investigations." This provides no basis for concluding that the Court is not a neutral arbiter. Defendants conflate "motive" with the Bankruptcy Court's exercise of its independent statutory duty to review attorney fees and conduct, based upon the information filed with the Court in documents sworn under penalties of perjury. The Bankruptcy Court has articulated multiple reasons for ordering the investigations and has identified concerns with both the fees charged by UpRight Law *as well as* UpRight Law's business practices that may have caused harm to some of its clients, including Debtor. These are not mutually exclusive problems.

(6) "The Bankruptcy Court has disregarded any notions of proportionality" by authorizing 2004 examinations in multiple cases filed by UpRight Law and its local partners, because the costs associated exceed the fees collected by UpRight Law in those cases. Defendants again attempt to manufacture grounds for withdrawal of the reference of this core proceeding where none exist. In the Brucker Bankruptcy Case, the UST has only conducted *two* 2004 examinations, one of Debtors and the other of Mr. Ford, and both were conducted in a single day. This is not unduly onerous. In fact, UpRight Law's own continued objections to any Court or UST inquiry into any case they have filed have exponentially increased its costs in this and other cases. It cannot be the standard that Defendants can immunize themselves from any review of their conduct and fees under the Bankruptcy Code merely by filing endless objections on the identical grounds, and by multiple motions to withdraw the reference and for leave for interlocutory appeal each time the Bankruptcy Court rejects Defendants' unsupported arguments. Accepting Defendants' fallacious argument would thwart the UST's ability to obtain information and evidence to enforce § 526 – 528 as to any debtor law firm's pattern or practice violations, not just those of UpRight Law.[16]

---

[16]Defendants' preemptive objection to discovery that has not yet commenced also provides no basis for concluding the Bankruptcy Court is not a neutral arbiter. And, any such concern is not ripe, but must be raised when and if such discovery

Defendants' examples of "prejudice" are insufficient to establish a due process violation and smack of forum shopping and judge shopping.  To establish a due process violation, the movant "must prove actual prejudice or partiality, which requires 'serious facts'."  *In re Pansier*, Bkr Ct. 18-22297 at Pge 4 (E.D.WI August 5, 2019) (citing *Margoles v. Johns*, 660 F.2d 291, 296 (7th Cir. 1981).  In *Margoles*, the Seventh Circuit held that "a litigant is not denied due process by either the 'appearance' of partiality or by circumstances which might lead one to speculate as to a judge's impartiality.  A litigant is denied due process if he is in fact treated unfairly."  660 F.2d at 296.  Adverse rulings, or the prospect of future adverse rulings, do not show that the Defendants have been treated unfairly by the Bankruptcy Court in this case.

Prior adverse judicial rulings alone may be proper grounds for appeal, but they do not demonstrate bias and do not provide 'serious facts' necessary to state a valid claim for a Fifth Amendment due process violation.  *Liteky v. United States*, 510 U.S. 540, 555 (1994); *Margoles,* 660 F.2d at 296.

The time for the Defendants to present their defense has not yet occurred.[17]  At trial, which is governed by the Federal Rules of Bankruptcy Procedure, Defendants will have a full and fair hearing and the opportunity to present evidence on their behalf.  As the Bankruptcy Court explained in denying the Motion to Close the Burns Bankruptcy Case, Defendants have been afforded more than adequate due process by way of numerous opportunities to file pleadings and to present oral argument in the disputed matters before the Court.

---

under the Federal Rules of Civil Procedure, as incorporated by the Federal Rules of Bankruptcy Procedure, may be issued. Nor does it provide any basis for withdrawal of the reference.

[17] Defendants' citation to *Colmenar v. I.N.S.*, 210 F.3d 967, 971 (9th Cir. 2000) is inapposite.  There, an immigration judge's ruling on applicant's deportation case was reversed because the court had pre-judged the case by relying on written application information and refused to permit the applicant to provide relevant testimony at the hearing regarding danger to his life.

There is no colorable basis for concluding that the Bankruptcy Court will deny Defendants due process in presenting their defenses in this adversary proceeding. And thus, **none** of Defendants' misplaced constitutional claims require withdrawal of the refence.

## III.    Permissive withdrawal of the reference is not warranted.

As an alternative to mandatory withdrawal, UpRight Law argues that this Court should withdraw the reference in this case in its discretion. Defendants have the burden to establish sufficient cause for permissive withdrawal of the reference. *Homa v. Gargula (In re Potter),* Case 3:19-cv-01139-NJR, Doc. 8, Pge. 2 (S.D. Ill. Dec. 9, 2019) citing *In re Stein*, Case No. 1:17-cv-00561-TWP-MJD, 2017 WL 2418325 at *1 (S.D. Ind. June 2, 2017)). Defendants have not carried this burden with regard to this Motion. As Chief Judge Rosenstengel stated in her Order denying Defendants' first Motion to Withdraw the Reference in the Potter Bankruptcy Case:

> A district judge "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown" for the removal. 28 U.S.C. § 157(d). Section 157(d) does not define "cause," but courts generally consider the following factors in determining whether cause exists: whether withdrawal would promote judicial economy or uniformity and efficiency in bankruptcy administration; whether it would reduce forum shopping; whether it would cause delay and costs to the parties; whether a particular court has familiarity with the case; whether the parties have demanded a jury trial; and whether a core or non-core proceeding is involved. *See Adelsperger as Tr. For Consol. Bankr. Estate of 5 Star Commercial, LLC v. 3d Holographics Med. Imaging Inc.*, No. 3:16-CV-759-HAB, 2019 WL 2206091, at *2 (N.D. Ind. May 21, 2019).

*Homa v. Gargula (In re Potter),* Case 3:19-cv-01139-NJR, Doc. 8, Pge. 2 (S.D. Ill. Dec. 9, 2019).

### A. Permissive Withdrawal of Core Bankruptcy Matters Should Be Denied

The most important factor in deciding permissive withdrawal is whether the matter is core. *Coe-Truman Technologies, Inc.*, 214 B.R. at 187. A core proceeding "invokes a substantive right provided by title 11 or if it is a proceeding that, by its very nature, could arise only in the context of a bankruptcy case." *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990). In footnote 39 on page 18 of the Motion, Defendants misrepresent the UST's position and misstate the jurisdictional standards, stating that "the

UST tacitly concedes, as she must, that this adversary proceeding is not a *bankruptcy case*; does not arise in a *bankruptcy case*; and is not related to a *bankruptcy case*," and cites paragraph 3 of the Amended Complaint.  (emphasis added).  But, the standard is not whether an adversary proceeding is a bankruptcy case.  Rather, it is the adversary proceeding's relationship to the *Bankruptcy Code* that determines jurisdiction and whether a cause of action is a core proceeding.  Core proceedings are those that "arise under title 11."  28 U.S.C. § 157(b)(1).  Paragraph 3 of the Complaint explicitly states that it asserts only claims arising directly under (and only under) the Bankruptcy Code (specifically, §§ 329 and 526).  Thus, as noted at the outset, claims brought under §§ 329 and 526 of the Bankruptcy Code are core proceedings, as are sanctions requests brought under those same statutes. *See, e.g., In re Rosales,* 621 B.R. 903, 912 (Bank. D. Kan. 2020); *In re French Bourekas, Inc.,* 183 B.R. 695, 696 (Bankr. S.D. N.Y. 1995).  Indeed, Defendants mischaracterize Section 157(b), by asserting that the core statutory claims do not fall within the enumerated list of core matters. Motion at 18.  But, Section 157(b) contains a *non-exclusive* list of core matters. As explained in *In re Harrelson,* 537 B.R. 16, 27 (Bankr .M.D. Ala. 2015), while "[a] claim asserting violations of debt relief agency restrictions is not specifically listed as a "core" proceeding under 28 U.S.C. § 157(b)(2)… Nevertheless, it is a core proceeding because the right to disgorge fees of entities purporting to provide bankruptcy assistance is established by the Bankruptcy Code and is unique to bankruptcy."  Similarly, the Seventh Circuit has long held that an attorney's conduct affects the administration of the estate and that sanctions issued in connection with attorney misconduct are core.  *See In re Memorial Estates, Inc.,* 950 F.2d 1364, 1370 (7th Cir.1991) (Rule 9011 matter and sanctions issued are core).  UpRight Law's claim that a proceeding asserting solely statutory bankruptcy code claims is non-core is frivolous and must be rejected.

The Bankruptcy Court's authority to decide disputes, reviews and challenges to the transactions between UpRight Law and its clients, as well as the reasonableness of UpRight Law's

attorney's fees, to regulate UpRight Law's conduct as a debt relief agency, and to ultimately decide adversary cases regarding these issues, are all core matters within the meaning of 28 U.S.C. § 157(b)(2), as they arise only in the context of a bankruptcy case pursuant to §§ 329, 526-528, 105(a), and Bankruptcy Rule 2017. The UST's duty and discretion to conduct such inquiries in the normal course of its own duties are also core matters that arise only in the context of a bankruptcy case pursuant to §§ 307, 329, 526-528, 105(a), and Bankruptcy Rule 2017. This Court should decline to withdraw this adversary proceeding involving purely core matters that should be adjudicated by the Bankruptcy Court.

**B. <u>Other factors do not favor withdrawal of the reference</u>.**

**1. <u>Withdrawal Will Not Promote Judicial Economy</u>**

Defendants assert that "judicial economy and preservation of resources support withdrawal of the reference." (Defendants' Brief, Pge. 18.) As stated above, the matters in the adversary proceeding are purely core matters such that the Bankruptcy Court can enter final judgment subject to appellate review by the District Court. Moreover, in denying the First Motion to Withdraw the Reference, Judge Rosenstengel determined that withdrawal of the core bankruptcy matter would not promote judicial economy, given the Court's already heavy existing case load. *Homa v. Gargula (In re Potter)*, Case 3:19-cv-01139-NJR, Doc. 8, Pge. 5 (S.D. Ill. Dec. 9, 2019).

Defendants argue that "given that the Bankruptcy Court has permitted the UST to engage in *scorched earth* discovery tactics, Defendants have every reason to be concerned that the Bankruptcy Court will continue to allow inefficient, and grossly excessive, discovery that is massively disproportional to the needs of this case (and others)." (emphasis in original.) *Id.* What is missing from Defendants' baseless claim is Defendants' recitation of exactly what discovery has occurred in this adversary proceeding and in the underlying bankruptcy case. No discovery has been undertaken in this adversary proceeding pursuant to Part VII of the Federal Rules of Bankruptcy Procedure, which

incorporate the Federal Rules of Civil Procedure.  The only review undertaken by the UST in the Burns Bankruptcy Case is limited to two Rule 2004 examinations, one of Debtors and one of Mr. Ford, and both were conducted on the same day.  Unlike Upright Law, the UST has not engaged in "scorched earth" discovery tactics in this adversary proceeding or in the Brucker Bankruptcy Case.

As Chief Judge Rosenstengel stated, "Judge Grandy is certainly the most familiar with the underlying case." *Homa v. Gargula (In re Potter)*, Case 3:19-cv-01139-NJR, Doc. 8, Pge. 5 (S.D. Ill. Dec. 9, 2019).   Withdrawing the reference in this adversary proceeding would not hasten the disposition of this case and is not required nor is it advisable.

## 2. Defendants' Forum-Shopping Should Be Rejected

Lastly, the Court should repudiate Defendants' blatant forum-shopping and judge-shopping. *See e.g. In re Doctors Hosp. 1997, L.P.,* 351 B.R. 813, 868-69 (Bankr. S.D. Tex. 2006) (finding plaintiffs' motion for withdrawal was a "transparent attempt at forum shopping" after bankruptcy court had ruled against plaintiffs on application for preliminary injunction); *In re New York Trap Rock Corp.,* 158 B.R. 574, 577 (S.D.N.Y. 1993) (denying defendant's motion on forum shopping grounds where bankruptcy court had already made adverse decisions relevant to the merits). The Motion is Defendants' second attempt relating to Debtors' bankruptcy to escape the Bankruptcy Court's authority by way of withdrawal of the reference.  When Defendants' duplicative motion for leave for an interlocutory appeal of the Court's denial of the Motion to Close is factored in, this Motion is Defendants' *third* attempt at forum shopping related to this one case.  Defendants' attempts to subvert the very purpose of this District Court's referral of bankruptcy cases to the Bankruptcy Court should be soundly rejected.

For all the reasons stated herein, the UST respectfully requests that the Motion be denied in its entirety.

Dated: April 26, 2021

Respectfully submitted,

NANCY J. GARGULA,
United States Trustee

*/s/ Mark D. Skaggs*
Mark D. Skaggs, Trial Attorney
ARDC No.: 6210087
United States Department of Justice
Office of the U.S. Trustee

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all parties of record through their attorneys electronically via the Clerk of the Court's CM/ECF filing system on the 26th day of April,  2021.

*/s/ Mark D. Skaggs*
Mark D. Skaggs